UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLORIA IKOSI,<br><br>               Plaintiff,<br><br>v.<br><br>CLS BANK INTERNATIONAL,<br><br>               Defendant. | Case No. 1:20-cv-00908-MKV |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000

Attorney of Record:
Daniel D. Schudroff

ATTORNEYS FOR DEFENDANT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL HISTORY............................................................................................................ 2

BACKGROUND FACTS ............................................................................................................... 2

    I.    About the Parties.................................................................................................. 3

    II.    Plaintiff's Job Responsibilities ............................................................................ 3

    III.    Plaintiff's Allegations in Support of Her Section 740 Claim ............................. 3

        A.    Plaintiff's Allegations Concerning CLS's Risk Management Processes and Tools ........ 3

        B.    Plaintiff's Validation Efforts of CLS's Scanning Tool ....................................... 5

STANDARD OF REVIEW ............................................................................................................ 6

ARGUMENT .................................................................................................................................. 7

THE EDGE ACT CONFERS THIS COURT WITH ORIGINAL JURISDICTION OVER PLAINTIFF'S COMPLAINT ......................................................................................................... 7

    I.    The Standards For Removal Jurisdiction Under The Edge Act......................... 7

    II.    Plaintiff Ignores that Banking Activity Need Not be a Central Component of a Claim for This Court to Exercise Jurisdiction Pursuant to the Edge Act ........................................... 8

    III.    Plaintiff's Section 740 Claim Necessarily Requires This Court To Determine Whether CLS Violated A Federal Regulation ................................................................................. 12

CONCLUSION............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**             Page(s)

Am. Int'l Grp., Inc. v. Bank of Am. Corp.,
  712 F.3d 775, 778 (2d Cir. 2013)......................................................................................7

Bank of Am. Corp. v. Braga Lemgruber,
  385 F. Supp. 2d 200 (S.D.N.Y. 2005).............................................................................8, 9

Beneficial Natl Bank v. Anderson,
  539 U.S. 1, 6, (2003)..........................................................................................................6

Berde v. North Shore-Long Is. Jewish Health Sys., Inc.,
  50 A.D.3d 834 (2d Dep't 2008) .......................................................................................13

Bordell v. General Elec. Co.,
  88 N.Y.2d 869, 644 N.Y.S.2d 912 (1996) .......................................................................13

D'Alessio v. N.Y. Stock Exch., Inc.,
  258 F.3d 93 (2d Cir. 2001)..........................................................................................12, 14

Hill v. Delta Int'l. Machinery Corp.,
  386 F. Supp. 2d 427 (S.D.N.Y. 2005)................................................................................6

Kirschner v. JP Morgan Chase Bank, N.A.,
  17-cv-6334, 2018 U.S. Dist. LEXIS 162832 (S.D.N.Y. Sept. 21, 2018) .......................7, 8

In re Lloyd's Am. Trust Fund Litig.,
  928 F. Supp. 333 (S.D.N.Y. 1996) ...............................................................................9, 11

Simmtech Co. v. Citibank, N.A.,
  13-cv-6768, 2013 U.S. Dist. LEXIS 172327 (S.D.N.Y. Dec. 4, 2013)..........................6, 9

Stamm v. Barclays Bank of N.Y.,
  96 cv-5158, 1996 U.S. Dist. LEXIS 15781 (S.D.N.Y. Oct. 23, 1996)...............................9

Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.,
  314 F. Supp. 2d 177 (S.D.N.Y. 2003)................................................................................6

U.S. Bank N.A. v. Triaxx Asset Mgt. LLC,
  No. 16-cv-8507, 2020 U.S. Dist. LEXIS 11554 (S.D.N.Y. Jan. 21, 2020) ...............8, 9, 11

Wilson v. Dantas,
  12-cv-3238, 2013 U.S. Dist. LEXIS 3475 (S.D.N.Y. Jan. 7, 2013) ...........................10, 11

Wilson v. Dantas,
    746 F.3d 530 (2d Cir. 2014)..................................................................................................9, 10

Yerdon v. Henry,
    91 F.3d 370 (2d Cir. 1996).........................................................................................................9

**PRELIMINARY STATEMENT**

Defendant CLS Bank International ("CLS" or "Defendant") submits this Memorandum of Law in Support of Its Opposition to Plaintiff Gloria Ikosi's ("Plaintiff") Motion for Remand ("Plaintiff's Motion") to New York State Supreme Court, New York County.

Plaintiff's Motion should be denied because this Court has original subject matter jurisdiction over Plaintiff's Complaint pursuant to the Edge Act, 12 U.S.C. § 632. Courts within this Circuit have routinely exercised jurisdiction over state-law causes of action pursuant to the Edge Act even where banking activity is not central to the particular claim. Although Plaintiff seeks to downplay the Complaint's allegations by asserting this case merely "involves internal wrongful acts of CLS" pertaining to her employment, her claims still rely upon transactions involving international or foreign banking as well as other international or foreign financial operations. Specifically, in addition to the Complaint's background allegations, the facts underlying Plaintiff's New York Labor Law Section 740 ("Section 740") claim integrally rely upon her purported objections to CLS's risk management evaluation process for settling foreign exchange transactions as well as critical details of the systems and protocols for handling such transactions involving international or foreign banking.

Moreover, in order to state a Section 740 cause of action, Plaintiff must establish that CLS violated a particular law, rule, or regulation. In this case, Plaintiff specifically (and only) refers to CLS's purported violation of Federal Regulation HH, 12 CFR Part 234. Accordingly, as explained below, any court evaluating Plaintiff's Section 740 claim will be required to delve into federal banking regulations, thereby providing a clear basis for this Court to exercise jurisdiction.

Plaintiff is the master of her own Complaint. She cannot pick and choose which portions of it to highlight or downplay in order to dissuade this Court from exercising jurisdiction over her claims. Because Plaintiff provides absolutely no basis for remanding this matter to the New York State Supreme Court, Plaintiff's Motion should be denied.

## PROCEDURAL HISTORY

On December 23, 2019, Plaintiff filed a Complaint in the New York State Supreme Court, New York County. The Complaint asserts four causes of action: (1) gender discrimination in violation of the New York City Human Rights Law ("NYCHRL"); (2) national origin discrimination in violation of the NYCHRL; (3) retaliation in violation of the NYCHRL; and (4) retaliation in violation of Section 740. The Complaint was served upon CLS on January 14, 2020. On February 3, 2020, CLS timely removed Plaintiff's Complaint to this Court predicated upon federal question jurisdiction pursuant to the Edge Act. 12 U.S.C. § 632 et. seq. (Docket # 1). On March 3, 2020, CLS timely filed a letter requesting a pre-motion conference for the purposes of seeking permission to file a motion to dismiss Plaintiff's Complaint in its entirety. (Docket #6). On March 4, 2020, Plaintiff filed her Motion for Remand. (Docket #7). On that same day, this Court denied CLS's request for a pre-motion conference as premature in light of Plaintiff's Motion. (Docket #8). This Court ordered that CLS "may renew its request once the threshold jurisdictional issue has been resolved." (Docket #8).[1]

---

[1] In accordance with this Court's Individual Practice 4(A)(i), "the submission of a pre-motion letter does not stay any future deadlines, except that submission of a pre-motion letter concerning a motion to dismiss will stay a defendant's time to answer or otherwise move with respect to the Complaint." Accordingly, CLS considers its deadline to answer or otherwise move in response to Plaintiff's Complaint to be stayed until an appropriate time after the jurisdictional issue is resolved.

2

**BACKGROUND FACTS**

I.    **About the Parties**

CLS is a federally chartered banking institution that maintains its principal place of business in New York, New York. CLS is an "Edge Act Corporation," a limited purpose bank regulated by, *inter alia*, the Federal Reserve Bank of New York. It is designated as a "systemically important financial markets utility" under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C. §§ 5301, et seq. because it serves as a coordinating point for the foreign exchange market's settlement of accounts across multiple currencies, settling approximately $5.1 trillion on a daily basis. (Complaint ¶¶ 5, 7, 10). CLS mitigates the settlement risk associated with these foreign exchange transactions. (Complaint ¶¶ 5-6).

On or about April 25, 2018, CLS hired Plaintiff as the Head of Model Validation. (Complaint ¶ 9). On or about May 14, 2018, she commenced working in this role. (Complaint ¶ 16).

II.   **Plaintiff's Job Responsibilities**

According to Plaintiff, CLS's model validation function is designed to evaluate the "effectiveness, reliability and integrity of models and algorithms" used in the settlement of foreign exchange transactions. (Complaint ¶ 10). An example of Plaintiff's model risk validation activities is work she undertook to ensure the sanctions scanning tool used by the Financial Crimes Compliance function was fit for purpose and operating properly. (Complaint ¶ 14).

III.  **Plaintiff's Allegations in Support of Her Section 740 Claim**

  A.  **Plaintiff's Allegations Concerning CLS's Risk Management Processes and Tools**

Plaintiff alleges that, in August 2018, Naresh Nagia, CLS' Chief Risk Officer, "pressured Plaintiff … to change her views on the severity of issues identified in [her] model

3

reviews in an attempt to compromise the independence of her work." (Complaint ¶ 61). In October and November 2018, she told Mr. Nagia about her concerns with the independence of CLS's risk management processes, which, according to her, he downplayed. (Complaint ¶ 61). According to Plaintiff's Complaint, Mr. Nagia's pressure and lack of support of her endeavor to ensure CLS's monitoring tools were "independently reviewed" "would create a substantial and specific danger to the public health or safety of citizens." (Complaint ¶ 61).

Plaintiff also asserts that, on November 29, 2018, she met with Messrs. Barnard and Nagia to discuss a proposed move of the Model Validation function to another management reporting line. (Complaint ¶ 57). Plaintiff asserts she objected to this proposed move because, in her view, it would compromise the function's independence and run afoul of applicable laws, rules, and regulations (in an unspecified way). (Complaint ¶ 57). Plaintiff's Complaint alleges that, after her meeting with Messrs. Barnard and Nagia, she met with Bryan Osmar, an outside CLS Director and Chairman of the Risk Management Committee, to confer about her earlier discussion with Messrs. Barnard and Nagia. (Complaint ¶ 57). It was during this meeting that Plaintiff allegedly raised objections and concerns with pay-out algorithms and other CLS monitoring tools as well as the proposed realignment of her role to another reporting chain. (Complaint ¶ 57).

Plaintiff claims she advised Mr. Osmar that moving the Model Validation function to another reporting line would affect financial exchange settlement, particularly how the Financial Crimes Compliance function addressed United States Treasury Office of Foreign Assets Control risks "such as international monetary transactions involving money laundering, and the movement of possible terrorism funding, that would create a substantial and specific danger to the public health or safety of citizens, including the citizens of the State of New York."

(Complaint ¶ 58). Plaintiff also asserts that she raised other concerns regarding other CLS monitoring tools which she claims had not been independently reviewed, "whose inadequate performance would create a substantial and specific danger to the public health or safety of citizens, including citizens of the State of New York." (Complaint ¶59). According to Plaintiff's Complaint, Mr. Osmar replied that she would have direct access to him and that he described her as a "whistleblower." (Complaint ¶ 60).

Plaintiff alleges that, on or about December 10, 2018, she sent an e-mail to Mr. Osmar about her ongoing objections concerning CLS's risk management functions. (Complaint ¶ 62). According to Plaintiff, this e-mail also reported that unspecified opinions expressed by unspecified outside consulting firms concerning CLS's risk management practices were being misrepresented by unspecified individuals, which, according to Plaintiff, "would create a substantial and specific danger to the public health or safety of citizens as well as violations of law, rule, or regulations." (Complaint ¶ 62. In turn, according to Plaintiff, Mr. Osmar suspended proposed realignment plans and disclosed Plaintiff's December 10, 2018 e-mail to Messrs. Barnard and Nagia. (Complaint ¶ 63).

B. **Plaintiff's Validation Efforts of CLS's Scanning Tool**

The Complaint also alleges that, between December 21, 2018 and February 7, 2019, Plaintiff conducted an independent validation of a scanning tool which identified significant technical deficiencies that "would interfere with the detection of [the United States Treasury Office of Foreign Assets Control's] prohibited transactions related to financial crimes and terrorism, and could create a substantial and specific danger to public health or safety of citizens, including citizens of the State of New York." (Complaint ¶ 64). During the week of February 4, 2019, Plaintiff claims she reported her objections based on her validation efforts and,

5

in turn, the CLS manager in charge of the Financial Compliance Crimes unit angrily told her that an unfavorable report on the model software would cause him and others to lose out on their bonuses. (Complaint ¶ 65).

On or about February 11, 2019, CLS terminated Plaintiff's employment. (Complaint ¶ 66).

## STANDARD OF REVIEW

It is well settled that "[r]emoval of an action filed in state court to federal court is proper in 'any civil action … of which the district courts of the United States have original jurisdiction.'" Simmtech Co. v. Citibank, N.A., 13-cv-6768, 2013 U.S. Dist. LEXIS 172327 at *5 (S.D.N.Y. Dec. 4, 2013) citing 28 U.S.C. § 1441(a). "A case removed from state court shall, however, be remanded '[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'" Id. citing 28 U.S.C. § 1447. Courts in this Circuit have held that "[i]n determining whether a claim arises under federal law, the Court 'examine[s] the well pleaded allegations of the complaint.'" Id. citing Beneficial Natl Bank v. Anderson, 539 U.S. 1, 6, (2003) (internal citations omitted).

"When the removal of an action to federal court is contested, the burden falls squarely upon the removing party to establish its right to a federal forum by competent proof." Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F. Supp. 2d 177, 179 (S.D.N.Y. 2003) (internal citations omitted). "If the removing party cannot demonstrate federal jurisdiction by competent proof, the removal was in error and the district court must remand the case to the court in which it was filed." Hill v. Delta Int'l. Mach. Corp., 386 F. Supp. 2d 427, 429 (S.D.N.Y. 2005) (citations omitted).

**ARGUMENT**

**THE EDGE ACT CONFERS THIS COURT WITH ORIGINAL JURIDICTION OVER PLAINTIFF'S COMPLAINT**

Plaintiff's Motion asserts that she "brings claims contesting the legitimacy of her treatment and termination from the workplace in New York City that do not arise out of transactions involving foreign banking and other international financial operations." (Plaintiff's Motion, at 4). She further claims "there is no specific offshore banking or financial transaction of CLS that form the basis of Plaintiff's wrongful termination claims." (Plaintiff's Motion, at 5). However, as set forth below, Plaintiff's objections seemingly ignore the facts underlying her claims and are without merit.

**I.      The Standards For Removal Jurisdiction Under The Edge Act**

"The Edge Act was enacted in 1919 for the purpose of supporting U.S. foreign trade, in part by authorizing the establishment of international banking and financial corporations." Kirschner v. JP Morgan Chase Bank, N.A., 17-cv-6334, 2018 U.S. Dist. LEXIS 162832 at *18 (S.D.N.Y. Sept. 21, 2018) quoting Am. Int'l Grp., Inc. v. Bank of Am. Corp., 712 F.3d 775, 778 (2d Cir. 2013). "Section 632 of the Act, which was added in 1933 …, provide[s] for federal court jurisdiction of certain suits to which Edge Act banks [a]re parties, with the apparent purpose of affording those banks 'predictable uniformity of adjudication supervised in the federal courts, and thus better protection against potentially divergent and conflicting strictures imposed by banking authorities of 48 states.'" Kirschner, 2018 U.S. Dist. LEXIS 162832 at *19 (internal citations omitted).

The Edge Act confers United States District Courts with original jurisdiction over civil litigation involving Edge Act Corporations with respect to international or foreign banking activities or financial operations. The Edge Act provides, in relevant part:

> All suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law.

12 U.S.C. § 632.

"To be removable under the Edge Act …, an action must: (1) be a civil suit, (2) have a federally charted corporation as a party, and (3) arise 'out of transactions involving international or foreign banking, [including territorial banking], or out of international or foreign financial operations." Kirschner, 2018 U.S. Dist. LEXIS 162832 at *20 (emphasis in original) (internal citations omitted). See also U.S. Bank N.A. v. Triaxx Asset Mgt. LLC, No. 16-cv-8507, 2020 U.S. Dist. LEXIS 11554 at *6 (S.D.N.Y. Jan. 21, 2020).

Here, there is no dispute that the first two elements are satisfied to justify removal. (Plaintiff's Motion, at 5). As described below, Plaintiff unpersuasively contests the third element.

### II. Plaintiff Ignores that Banking Activity Need Not be a Central Component of a Claim for This Court to Exercise Jurisdiction Pursuant to the Edge Act

Banking activity need not be central to the claim for Edge Act jurisdiction to attach as federal courts in the Second Circuit have consistently interpreted the Edge Act's jurisdictional provision broadly. U.S. Bank Nat'l Ass'n, 2020 U.S. Dist. LEXIS 11554 at *9-10, citing Bank of Am. Corp. v. Braga Lemgruber, 385 F. Supp. 2d 200, 214 (S.D.N.Y. 2005). "[C]ases based on state law causes of action and containing only an incidental connection to

banking law" are properly within Edge Act jurisdiction, even in cases where "international or foreign banking activity [is] not central to the case." U.S. Bank Nat'l Ass'n, 2020 U.S. Dist. LEXIS 11554 at *10. See also In re Lloyd's Am. Trust Fund Litig., 928 F. Supp. 333, 338 (S.D.N.Y. 1996) ("[a] suit satisfies the jurisdiction requisites of [the Edge Act] if any part of it arises out of transactions involving international or foreign banking") (emphasis added); Lemgruber, 385 F. Supp. 2d at 215 (calling for broad interpretation of Edge Act jurisdiction).

While 12 U.S.C. § 632 does not specifically define the terms "banking" or "financial operations," other Edge Act provisions are instructive. See e.g. Yerdon v. Henry, 91 F.3d 370, 376 (2d Cir. 1996) ("[The interpretation of a statute requires consideration of the relevant provision in conjunction with the entire statute.") (internal citations omitted). For example, 12 U.S.C. § 611 of the Edge Act references the formation of corporations "organized for the purpose of engaging in international or foreign banking or other international or foreign financial operations." Similarly, 12 U.S.C. § 615(a) enumerates the powers of an Edge Act Corporation to "purchase and sell coin, bullion, and exchange." Foreign currency transactions, which is what Plaintiff was monitoring during her tenure with CLS, is unquestionably considered a banking function or a foreign financial operation. See e.g. Simmtech, 2013 U.S. Dist. LEXIS 172327 at *15-19 (citations omitted)); see also Stamm v. Barclays Bank of N.Y., 96 cv-5158, 1996 U.S. Dist. LEXIS 15781, *6-7 (S.D.N.Y. Oct. 23, 1996).

It does not appear that any court within this Circuit has squarely addressed whether removal (or original) subject matter jurisdiction exists over NYCHRL or Section 740 claims pursuant to the Edge Act. However, following the themes of the above-referenced case law, in Wilson v. Dantas, 746 F.3d 530, 535 (2d Cir. 2014), the United States Court of Appeals for the Second Circuit held the district court properly exercised jurisdiction pursuant to the Edge

9

Act over a plaintiff's breach of fiduciary and contractual claims against his former employer, Citibank, for compensation due in connection with foreign investment transactions. Id. The court below in Wilson v. Dantas, 12-cv-3238, 2013 U.S. Dist. LEXIS 3475 at n. 2 (S.D.N.Y. Jan. 7, 2013) found "[r]emoval was proper because . . . [the plaintiff's] claims against Citibank pertain[ed], **in part**, to Citibank's involvement in an international investment program." Id. at n. 2 (emphasis added). The district court also found that "[c]ertain of [the plaintiff's] claims ar[o]se out of Citibank's banking or financial activities because **[the plaintiff] allege[d]** that Citibank took on fiduciary duties to [the plaintiff] by virtue of its contribution of capital and activities related to the management of [a fund.]" Id. (emphasis added). Ultimately, the district court dismissed the plaintiff's breach of fiduciary claim against Citibank after finding an employment relationship did not create a fiduciary relationship. Id. at *12.[2]

Wilson is particularly apt because the claims at issue arose between the plaintiff and his former employer, but the particular banking aspect was not central to the case or the particular cause of action. Here, aside from referring to general case authority pertaining to Edge Act jurisdiction, Plaintiff does not cite any case law in support of her claim that remand is appropriate. Instead, Plaintiff contends that this Court lacks jurisdiction over the Complaint because her purported wrongful termination – not foreign banking or other international financial operations – gives rise to her claims. However, that assertion oversimplifies the facts underlying her claims. Plaintiff cannot have it both ways by only reciting allegations concerning her role at CLS, but conveniently ignoring the crux of the facts underlying her whistleblower claim which

---

[2] Notably, the Wilson court exercised supplemental jurisdiction over the plaintiff's other state-law claims against Citibank, even though they did not pertain to international banking or financial operations, but declined to do so over other unrelated state-law claims against the non-Citibank defendants. Id. at *29-32. In the present case, all of Plaintiff's claims arise out of the same set of facts and all of her claims are predicated upon her termination. Thus, because this Court should exercise jurisdiction over, at least Plaintiff's Section 740 claim, as in Wilson, it should exercise supplemental jurisdiction over her related NYCHRL claims.

10

unequivocally deals with international banking transactions and/or international financial operations. (Complaint ¶¶ 56-71).

Specifically, Plaintiff alleges that she was responsible for overseeing risk management monitoring functions of international transaction settlements performed by CLS, and that she was terminated for raising concerns over deficiencies in that process. (Complaint ¶¶ 56-71). The transactions that Plaintiff monitored are international transactions, and Plaintiff, in her role as Head of Model Validation, performed a direct service to "international or foreign financial operations." (Complaint ¶¶ 56-71). Additionally, Plaintiff alleges that she was terminated shortly after reporting her objections and concerns regarding what she deemed to be "significant technical deficiencies in the software and the governance of its use that would interfere with the detection of [the United States Treasury Office of Foreign Assets Control's] prohibited transactions related to financial crimes and terrorism…." (Complaint ¶ 64). Thus, at the very least, Plaintiff's Section 740 claim involves aspects of international or foreign banking and she cannot cherry pick which parts of her claims this Court should review for determining federal question jurisdiction. See U.S. Bank Nat'l Ass'n, 2020 U.S. Dist. LEXIS 11554 at *10; In re Lloyd's Am. Trust Fund Litig., 928 F. Supp. at 338; Wilson, 2013 U.S. Dist. LEXIS 3475 at n. 2 (court focused on the plaintiff's allegations to exercise jurisdiction pursuant to the Edge Act even though the causes of action were strictly traditional state-law claims).

CLS is mindful of the limits of this Court's jurisdiction. That is precisely why it does not agree with Plaintiff's supposition that CLS interprets the Edge Act as requiring "any personnel or other matter involving CLS … be heard in federal court." (Plaintiff's Motion, at 4). Plaintiff's Complaint does not recount just "any personnel" matter. Rather, as described above, Plaintiff's role with CLS, and the facts underlying her claims, directly pertain to international

11

banking or international financing operations which makes this employment dispute sufficiently unique for this Court to exercise jurisdiction. Indeed, an analysis of Plaintiff's Section 740 claim requires a much more significant understanding of "transactions involving international banking or international financing operations" than the many cases where Edge Act jurisdiction was properly conferred simply by incidental relation to a foreign banking transaction. Plaintiff's conclusory assertions to the contrary should be disregarded and her Motion to Remand denied.

### III.     Plaintiff's Section 740 Claim Necessarily Requires This Court To Determine Whether CLS Violated A Federal Regulation

Removal is also appropriate in this case because a court evaluating Plaintiff's Section 740 claim is required to interpret and apply federal bank regulations to determine whether Plaintiff has even established a *prima facie* cause of action. D'Alessio v. N.Y. Stock Exch., Inc., 258 F.3d 93, 101 (2d Cir. 2001) is instructive. There, the plaintiff filed a complaint in New York State Supreme Court against the New York Stock Exchange ("NYSE") asserting numerous state-law tort claims based upon allegations that the NYSE "violate[d] applicable statutory and regulatory prohibitions governing unlawful trading…, by 'concocting a phoney [sic] interpretation' of these provisions and knowingly disseminating that incorrect interpretation to the detriment of [plaintiff and others.]." Id. at 98. In finding the defendant properly removed the case to federal court, the Second Circuit found "resolution of [the plaintiff's] claims require[d] a court to construe federal securities laws and evaluate the scope of the NYSE's duties, as defined under the Exchange Act *and the regulations and rules thereto*, in enforcing and monitoring a member's compliance with those laws." Id. at 101-102. (Emphasis added).

This authority applies with equal force to the present case. Like D'Alessio, Plaintiff seemingly disregards that whether her actions amounted to protected whistleblower activity requires a deep substantive investigation of international and foreign banking practices.

(Complaint ¶¶ 56-71). To this end, Section 740 prohibits retaliatory action against an employee who:

> discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a <u>substantial and specific danger to the public health or safety</u>.

N.Y. LABOR LAW § 740(2)(a) (emphasis added). Critically, Section 740 "**require[s] proof of an actual violation of law to sustain a cause of action.**" <u>Bordell v. General Elec. Co.</u>, 88 N.Y.2d 869, 871, 644 N.Y.S.2d 912, 913 (1996) (emphasis added); <u>Berde v. North Shore-Long Is. Jewish Health Sys., Inc.</u>, 50 A.D.3d 834, 835 (2d Dep't 2008).

Here, CLS submits that Plaintiff's Section 740 claim is entirely unmeritorious. However, as noted above, Plaintiff asserts, *inter alia*, that she objected to CLS's proposed decision to reorganize its Model Validation function because, in her view, the function's lack of independence would directly affect *foreign exchange settlement*, including how risks associated with *international monetary transactions* involving money laundering, and movement of possible terrorism funding, were identified and mitigated. (Complaint ¶ 58). Plaintiff's Complaint asserts, in a wholly conclusory fashion, that she "objected to, or refused to participate in any such activity, policy or practice in violation of laws, rules or regulations, **including Federal Regulation HH (12 C.F.R. Part 234).**" (Complaint ¶ 69) (emphasis added). Thus, for Plaintiff to prevail on her Section 740 claim, she must be able to establish CLS violated some law, rule, or regulation. In this case, she happens to assert CLS's handling of foreign exchange settlements and international monetary transactions violated Federal Regulation HH and, notably, does not identify any other law, rule, or regulation CLS purportedly violated. Accordingly, to determine the validity of Plaintiff's Section 740 claim, a court *must* delve into whether CLS violated a federal banking regulation, putting "transactions involving international

banking or international financing operations" squarely at the center of the dispute and thereby vesting this Court with original subject matter jurisdiction. See D'Alessio.

## CONCLUSION

For the reasons set forth herein, CLS respectfully requests the Court enter an order denying Plaintiff's Motion to Remand and awarding CLS such other and further relief as the Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000

Dated: March 18, 2020        By:   /s/ Daniel D. Schudroff
       New York, New York           Daniel D. Schudroff

ATTORNEYS FOR DEFENDANT

4846-1519-3527, v. 4